JESSE SHAW v. THE STATE.

*No. 3249.   Decided November 27.*

**1. Slander—Indictment.**—See the statement of the case for the charging part of an indictment held sufficient to charge the offense of slander.

**2. Same—Evidence—Justification—Charge of the Court.**—While the State is not required, in slander cases, to prove the falsity of the imputations alleged to be

slanderous, the defendant has the right to justify by proving, if he can, the truth of his imputations, and upon this issue the general reputation of the female for chastity may be proved; and proof of her bad reputation will entitle the accused to an acquittal. In refusing a requested charge to this effect the trial court erred.

3. Same.—To rebut the inference of malice, and that the imputation was wantonly made, the defense offered evidence to the effect that one Taylor had said that defendant and the alleged slandered female had been carnally intimate, and that Taylor was being threatened with violence when, for the purpose of protecting Taylor, the defendant made the slanderous statements. The court rejected the proposed proof. *Held,* correct.

APPEAL from the County Court of Kaufman. Tried below before Hon. John Vesey, County Judge.

The conviction in this case was for slander by imputing to Ellen Goodman, an unmarried female, a want of chastity. The penalty imposed by the verdict was a fine of one hundred dollars and confinement in the county jail for twenty days.

The charging part of the indictment reads as follows:   *   *   *
"That Jess Shaw, on the 15th day of October, 1887, in the county and State aforesaid, did orally, falsely, maliciously, and wantonly impute to a female in this State, to-wit, Ellen Goodman, a want of chastity, to-wit, the said Jess Shaw did then and there, in the presence of George Love and other persons, falsely, maliciously, and wantonly say of and concerning the said Ellen Goodman, that she, the said Ellen Goodman, was unchaste, and that he, the said Jess Shaw, had had carnal intercourse and carnal knowledge of her, the said Ellen Goodman; and of and concerning the said Ellen Goodman, did falsely speak these words, to-wit: 'I (meaning himself, the said Jess Shaw) have been cramming her' (meaning the said Ellen Goodman), and then and there by the word cramming as so used meaning carnal intercourse and carnal knowledge; the said Ellen Goodman being then and there an unmarried female," etc.

The proof shows that defendant, on the day alleged in the indictment, said to George Love as follows: "George Taylor has got himself into trouble, and to save him I will have to tell the whole matter. I am guilty; I have had carnal intercourse with Ellen Goodman. One Sunday evening I was riding by her father's house, and saw her standing in the door. She spoke to me, and invited me to get down and come in, saying that she was alone, and that the others of the family were away from home. I got down, hitched my horse, and went in, and while in the house I crammed her."

Other testimony for the State shows that the defendant fled the country after the finding of the indictment against him; that he subsequently returned, and pending the trial attempted to induce Ellen Goodman to confess, in open court, that she had been carnally intimate with him, and that the said Ellen Goodman declined to do so, saying that she would not swear to a lie to save even her brother. The witnesses for the State testified that Ellen Goodman's reputation for chastity was good.

The defendant, testifying in his own behalf, admitted that he made the statement to Love, as charged in the indictment, which statement he declared was true in every particular and detail. Other witnesses for the defense, several in number, testified that the general reputation of Ellen Goodman for chastity was bad before the alleged slander.

*W. H. Allen,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

HURT, JUDGE.—This is a conviction for slander. The indictment we think is sufficient.

Quite a number of witnesses swear that the general reputation for chastity of Miss Ellen Goodman, the party charged to have been slan-, dered, was bad. Counsel for appellant requested the court to charge the jury that if they believed from the evidence that her reputation for chastity was bad they should acquit. This charge was refused, and counsel excepted, reserving his bill.

The statute upon which this prosecution is based, articles 645 and 646 of the Penal Code, reads: "If any person shall, orally or otherwise, falsely and maliciously impute to any female in this State, married or unmarried, a want of chastity, he shall be deemed guilty of slander, and, upon conviction, shall be fined not less than one hundred nor more than one thousand dollars, and the jury may, in addition thereto, find a verdict for the imprisonment of defendant in the county jail not exceeding one year.

"In any prosecution, under this chapter, it shall not be necessary for the State to show that such imputation was false, but the defendant may in justification show the truth of the imputation, and the general reputation for chastity of the female alleged to have been slandered may be inquired into."

It is seen that while the State is not required to prove the imputation false, still the accused may justify by showing that the imputation is true. Thus far there is no trouble, but the statute further provides: "but the defendant may in justification show the truth of the imputation, *and the general reputation for chastity of the female alleged to have been slandered may be inquired into."*

Let us suppose that the inquiry is made, and that the result of the investigation is that her general reputation for chastity is bad, and that the jury is satisfied of this, what effect should this fact (bad reputation for chastity) have upon the case? Must the jury acquit? We think so. Patterson v. The State, 12 Texas Ct. App., 458; McMahan v. The State, 13 Texas Ct. App., 220.

Appellant proposed to prove by several witnesses that Thomas Taylor

had said that defendant and Ellen Goodman had been carnally intimate, and that Taylor was being threatened with violence, and that appellant made the slanderous statement in defense of Taylor.

These facts were offered in evidence for the purpose of rebutting the inference of malice, or that the imputation was made wantonly. These facts were rejected by the court and a bill of exceptions was reserved by appellant.

Let us look back of this matter. The court instructed the jury that if they believed from the evidence that the imputation was true then to acquit the appellant. This verdict of guilty in legal effect determines this issue against the appellant. By their verdict the jury must have found the imputation false, and if false this appellant knew it to be false. Now then we have this state of case. The appellant to protect his friend Taylor imputed to an innocent lady a want of chastity, knowing her to be innocent of the particular charge made by him—a charge more fatal than any other in the catalogue of crimes committed by woman. This is done knowingly and deliberately to protect his friend, and we are told that there is no malice in this, or that the charge was not wantonly made. Concede the purpose or reason for the slander to be that claimed by appellant, and we are forced to the conclusion that instead of refuting the inference of malice they—his reasons—demonstrate that the imputation was deliberately, maliciously, wantonly, and knowingly made. A calmly determined effort to protect a friend by making an innocent girl a victim to his scheme—her character must be blackened, and destroyed forever—not by her own lewd and dissolute acts, but by appellant for the purpose of protecting Taylor, who had been engaged in proclaiming the slander evidently put adrift by appellant. The evidence was properly rejected.

We do not desire to be understood as expressing an opinion as to the truth of the imputation—it may have been true. We have discussed the competency of the proposed evidence upon the assumption that the imputation was false—assuming this from the verdict of the jury.

Other questions presented will not be discussed, as they will not likely arise upon another trial. Because the court refused to charge the jury that if they should believe from the evidence that the general reputation of Ellen Goodman for chastity was bad, then to acquit the defendant, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Judges all present and concurring.